## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-23865-CIV-BLOOM/D'ANGELO

**MICHAEL GRIFFITH,**

      **Plaintiff,**

**vs.**

**PATRICIA TOSCANO,**

      **Defendant.**

_____/

### REPORT AND RECOMMENDATION
### GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Patricia Toscano's Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum of Law filed on September 22, 2025 (DE 13).[1] Plaintiff Michael Griffith filed his response in opposition on October 6, 2025 (DE 16), and Defendant replied on October 20, 2025 (DE 25).  The Court held a hearing on the Motion on January 23, 2026, at which it heard the arguments of the Parties.  Having considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons stated below, it is respectfully recommended that Defendant's Motion to Dismiss be **GRANTED** and that this case be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

### I.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Plaintiff is a resident of New York, and Defendant is a citizen of and currently resides in the Republic of Ireland (DE 1-2 ¶¶ 3-5).  In the Complaint, Plaintiff alleges that he and Defendant

---

[1] This Motion was referred to the undersigned Magistrate Judge for a Report and Recommendation (DE 24).

were longtime friends (*id*. ¶ 6). In late 2024 or early 2025, Plaintiff and Defendant allegedly entered into an express oral contract, agreeing that Plaintiff would assist Defendant in the sale of real property at 6825 Sunrise Drive, Coral Gables, FL 33133 (the "Property") (*id*. ¶¶ 4, 9). In exchange for his assistance, Defendant would split half of the post-tax proceeds from the sale with Plaintiff (*id*. ¶ 9). Plaintiff alleges that he fully performed his obligations under the agreement, and Defendant sold the Property (*id*. ¶¶ 10, 18). The net proceeds from the sale were at least $6,500,000.00 (*id*. ¶ 11). According to Plaintiff, Defendant only partially performed by wiring $2,000,000.00 to Plaintiff, and Plaintiff is owed at least another $1,250,000.00 under the terms of the agreement (*id*. ¶¶ 12, 13). Plaintiff alleges that Defendant refused to deliver the remaining funds to Plaintiff, and he has been damaged by Defendant's breach as he has not received all compensation called for by their agreement (*id*. ¶¶ 14-15). According to Plaintiff, Defendant took possession of the post-tax net proceeds from the sale, half of which belonged to Plaintiff, and ignored Plaintiff's demand to release the funds (*id*. ¶¶19-23). Plaintiff claims that the funds were wired to and remain in Defendant's Wells Fargo bank account (*id*. ¶ 24).

Plaintiff initially brought this action on April 18, 2025 in the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County in *Griffith v. Toscano*, No. 2025-007197-CA-01, alleging claims for breach of contract and conversion (DE 1 ¶ 1; DE 1-2). Defendant removed the case from state court to this Court on August 27, 2025 based on diversity jurisdiction due to the complete diversity of the Parties and the amount in controversy exceeding $75,000.00 (DE 1 ¶ 9). On August 11, 2025, before the action was removed to this Court, Plaintiff filed a Return of Service Affidavit, stating a process server personally served Defendant in Ireland (DE 6-1 at 1; DE 13-3). On September 22, 2025, Defendant filed the instant Motion to Dismiss, arguing that the Court should dismiss this matter for lack of personal jurisdiction and failure to effectuate timely service

of process (DE 13).  Alternatively, Defendant argues that Plaintiff failed to adequately plead a cause of action for conversion (*id.*).  On October 28, 2025, the Court stayed discovery pending resolution of the Motion to Dismiss (DE 29).

## II.   <u>LEGAL STANDARD</u>

### A.  Personal Jurisdiction

"As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) (citation omitted).  "The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted).  "First, we must examine the jurisdictional issue under the state long-arm statute." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (citation omitted).  A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: (1) specific jurisdiction, and (2) general jurisdiction. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015) (citing FLA. STAT. § 48.493(1)(a), (2)).  "The reach of the [Florida long-arm] statute is a question of Florida law. [F]ederal courts are required to construe [such law] as would the Florida Supreme Court." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citation omitted).  "If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Madara*, 916 F.2d at 1514 (citation omitted).

"The district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits." *Cable/Home Commc'n Corp.*, 902 F.2d at

3

855 (citation omitted). "Absent an evidentiary hearing on a motion to dismiss for want of personal jurisdiction, the district court must first determine that the plaintiff has established a *prima facie* case of personal jurisdictional over the nonresident defendant which is capable of withstanding a directed verdict motion." *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005) (citation omitted). "In making this determination, the district court must accept the plaintiff's factual allegations, unless those allegations are contested by the defendant's affidavits." *Id.* (citation omitted). "'[S]pecific factual declarations within the affiant's personal knowledge[]' . . . are sufficient 'to shift to the Plaintiff[ ] the burden of producing evidence supporting jurisdiction.'" *Mazer*, 556 F.3d at 1277. "The burden, however, does not shift back to the plaintiff when 'the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Madara*, 916 F.2d at 1514.

## B. Insufficient Service of Process

Federal Rule of Civil Procedure 4(f) provides that a foreign party may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." FED. R. CIV. P. 4(f)(1). "The United States and Ireland are both parties to the Hague Convention . . . ." *GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, No. 14-CIV-2303, 2015 WL 622327, at *1 (D. Kan. Feb. 12, 2015). Article 10(c) of the Hague Convention allows for "the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Convention, Art. 10. Ireland objected to this provision and instead, allows "any person in another Contracting State who is interested in a judicial

proceeding (including his lawyer) from effecting service in Ireland directly through a solicitor in Ireland." Hague Conference on Private International Law Conference, Ireland Declarations Reservations, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid= 404&disp=resdn (last visited on January 28, 2026); *see also GCIU-Emp. Ret. Fund*, 2015 WL 622327, at *2 (finding defendant was properly served in Ireland under the Hague Convention where plaintiffs provided an affidavit from an Irish solicitor stating that she caused the documents to be served upon defendant pursuant to the rules of Ireland).

### C. Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this plausibility standard, a plaintiff must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## III.   DISCUSSION

### A. The Complaint Should be Dismissed for Lack of Personal Jurisdiction

Defendant argues that Plaintiff fails to allege facts supporting the existence of personal jurisdiction by relying solely on generic allegations that the contract was breached and that a tort

occurred in Miami-Dade County, which are not sufficient to trigger personal jurisdiction under the provisions of the Florida long-arm statute (DE 13 at 5).  Defendant argues that the Complaint does not reference any provisions of the long-arm statute that would afford a basis for personal jurisdiction and does not assert any conduct sufficient to invoke personal jurisdiction over Defendant in Florida (*id*. at 5-6).  Defendant further contends that the Complaint does not allege Defendant failed to perform any act in Florida under the alleged contract (*id*. at 5-8).  Nor does the Complaint allege that the agreement required Defendant to pay Plaintiff in Florida, that the funds at issue were located in Florida, or any other facts that support the exercise of specific jurisdiction under any subsection of the long-arm statute (*id*. at 7-8).  Indeed, Defendant claims the jurisdictional facts in the Complaint are so lacking that Defendant can only guess as to what the basis of personal jurisdiction is, and the jurisdictional allegations neither comply with long-arm statute nor Due Process (*id*.at 6-7).

Plaintiff counters that there is specific jurisdiction over Defendant based on Sections 48.913(1)(a)(1)-(3) and (7) of the Florida long-arm statute (DE 16 at 4).[2]  Plaintiff argues that Defendant "clearly conducted business in South Florida (Miami-Dade County) sufficient to satisfy Florida's long-arm statute" by purchasing the Property that was the subject of the alleged agreement (*id*.).  Plaintiff further argues that another contract, the Purchase Option Agreement, that Defendant signed contained a Florida choice of law provision and listed Miami-Dade County as the choice of venue (*id*. at 4-5).  According to Plaintiff, the agreement was created in Miami-Dade County, and "Defendant performed the express conditions of the agreement in Miami-Dade [County]" (*id*. at 5).  Additionally, Defendant asserts that the closing for the Property was in

---

[2] At the January 23, 2026 hearing, Plaintiff withdrew his assertion that there is personal jurisdiction based on § 48.913(1)(a)(1)(4).

Miami-Dade County, all performed conditions of the sale were conducted in Miami-Dade County, and Plaintiff believes that the money Defendant purportedly held from the sale was located at a Wells Fargo branch in Miami-Dade County (*id*.). Plaintiff therefore claims that the breach of the agreement and the conversion of the funds occurred in Miami-Dade County, which is sufficient to bring Defendant within the Court's jurisdiction (*id*.).

    *1.   The Evidence and Allegations Set Forth by the Parties*

Plaintiff alleges the following in the Complaint related to personal jurisdiction: the contract at issue was breached in Miami-Dade County and the tort at issue occurred in Miami-Dade County (DE 1-2 ¶ 2). Plaintiff is a resident of New York, and Defendant is a citizen of and currently resides in the Republic of Ireland (*id*. ¶¶ 3-5). According to the Complaint, Defendant resided at the Property for some unspecified period of time but then fled the United States and is now living overseas (*id*. ¶ 4). Defendant owned the Property, located in Coral Gables, FL, and "the funds [from the sale of the Property] were wired to and, on information and belief, remain in Defendant's bank account at Wells Fargo" (*id*. ¶¶ 8, 24).

In support of her jurisdictional challenge, Defendant submitted a declaration dated September 21, 2025, stating that she is a citizen of the Republic of Ireland, has never been a citizen of the United States, and has never remained in the United States on a single trip past ninety days (DE 13-1 ¶¶ 2-5). Defendant stated that her and Plaintiff were in a "transatlantic romantic relationship," they never lived together, and they met in various destinations around the world throughout their relationship (*id*. ¶ 6). Defendant stated that after the trips, she always returned to Ireland (*id*.). Defendant stated that she purchased the Property and subsequently received the title on April 4, 2025 but never resided at the Property (*id*. ¶¶ 10-11). Defendant sold the Property on April 15, 2025 (*id*. ¶ 12). Additionally, Defendant stated that she does not own any business in

Florida and has never conducted business in Florida (*id*. ¶ 13).  Plaintiff did not provide a competing declaration; however, Plaintiff attached the Option Agreement for the Sale and Purchase of the Property ("Purchase Option Agreement") to his opposition (DE 16-1).

### 2.  Specific Jurisdiction

Florida's long arm statute provides several ways in which a Florida court can exercise personal jurisdiction over a non-resident defendant:

> A person, whether or not a citizen or resident of this state, who personally . . . does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> > 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> >
> > 2. Committing a tortious act within this state.
> >
> > 3. Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.
> >
> > . . .
> >
> > 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

FLA. STAT. §§ 48.193(1)(a)(1)-(3), (7) (2016).[3]  Turning to Plaintiff's first argument that Section 48.193(1)(a)(1) applies, "[i]n order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citation omitted). "Factors relevant, but not dispositive, to this analysis include the presence and operation of an

---

[3] At the January 23, 2026 hearing, the Parties agreed that they did not request jurisdictional discovery and that they are not requesting the Court to resolve any disputes by way of an evidentiary hearing.  Further, both Parties analyze the issue of personal jurisdiction under Florida law.

office in Florida, the possession and maintenance of a license to do business in Florida, the number

of Florida clients served, and the percentage of overall revenue gleaned from Florida clients."

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005)

(citations omitted).  In this case, the Complaint offers no factual allegations that show Defendant

carried on business in Florida, had an office in Florida, or received revenue from Florida clients

(*see generally* DE 1-2).  Plaintiff does not point to any facts that establish even a *prima facie* case

of specific jurisdiction under this theory.  Moreover, Defendant's declaration states that she does

not own any business in Florida and has never conducted business in Florida (DE 13-1 ¶ 13).

Considering that these facts are uncontroverted by Plaintiff, there is no basis to conclude Defendant

carried on business in Florida within the meaning of the long-arm statute.

At the January 23, 2026 hearing, Plaintiff countered that the agreement at issue created a

business venture between Plaintiff and Defendant in Florida within the meaning of Section

48.193(1)(a)(1).  Plaintiff is correct insofar as a single transaction can constitute a business venture

in limited circumstances.  *See Stone v. Shafran*, 641 F. Supp. 3d 1344, 1358 (S.D. Fla. 2022) ("A

*business venture*, on the other hand, 'can consist of a single project or transaction.'" (citation

omitted)).  In fact, the United States Court of Appeals for the Eleventh Circuit has discussed

instances when a single transaction may suffice:

> Florida courts have recognized that a 'business venture can consist of a single
> project or transaction.' *Atlantis Marina & Yacht Club, Inc. v. R & R Holdings, Inc.,*
> 766 So.2d 1163, 1165 (Fla. 3d DCA 2000) (finding the long arm statute's 'business
> venture' requirement satisfied where company brought a $1.45 million yacht to
> Florida, marketed it over a period of time, and eventually sold it in Florida). **But
> they have generally done so only where the transaction was substantial in
> scope and could lead to additional economic activity in the state**. *See, e.g., Linn,*
> 97 So.2d at 460 (entering into a contract to construct an apartment building in
> Florida, with the intent of renting that building to tenants, was a 'business venture'
> sufficient to support long arm jurisdiction); *State ex rel. Weber v. Register,* 67 So.2d
> 619, 620–21 (Fla.1953) (purchasing Florida orange grove and later listing it for sale
> in Florida was a business venture sufficient to obtain substituted personal service

and establish jurisdiction); *Labbee v. Harrington* 913 So.2d 679, 683 (Fla. 3d DCA 2005) (finding the 'business venture' requirement satisfied where the defendant rented out property for 20 years and then sold it). **Florida courts have declined to exercise long arm jurisdiction where the transaction in question was isolated and did not involve any continued activity.** *See Foster, Pepper & Riviera v. Hansard,* 611 So.2d 581, 582–83 (Fla. 1st DCA 1992) (law firm's preparation of a private placement memorandum to facilitate a limited partnership offering was not a general course of business activity sufficient to invoke long arm jurisdiction); *Hayes v. Greenwald,* 149 So.2d 586, 587 (Fla. 3d DCA 1963) (holding that '[t]he isolated action of selling a home, by one who moves to another state, does not amount to a business venture' for purposes of the substituted services statute and therefore jurisdiction is lacking).

*RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 785 (11th Cir. 2014) (emphasis added).   Here, Plaintiff offers no facts, however, that establish the alleged oral contract was substantial in scope or led to additional economic activity in Florida.[4]   To the contrary, at most, the allegations in the Complaint discuss the agreement between Plaintiff and Defendant and once completed, there are simply no allegations that Defendant intended to engage in continued activity in the forum state.   Moreover, Plaintiffs does not offer a single case from any court to show the facts in the Complaint demonstrate that Defendant engaged in a business venture in Florida.

Plaintiff next argues that the Complaint states "the contract was breached in Miami-Dade and the tort at issue occurred in Miami-Dade[,]" which establishes specific jurisdiction under Section 48.193(1)(a)(2), because Defendant committed a tortious act in Florida (DE 1-2 ¶ 2).[5]   But, this is not a factual allegation; this is a legal conclusion.   And the Court is not required to accept such a naked assertion untethered to any facts in the Complaint as true.   *See Cole v. Young*, 785 F.

---

[4] Though the sale of the Property is not the contract at issue in this case, it is notable that Defendant's declaration revealed that she owned the Property from April 4, 2025 to April 15, 2025—a total of eleven days (DE 13-1 ¶¶ 10-12).

[5] Aside from the legal conclusion in paragraph two, not a single factual allegation anywhere in the twenty-five paragraph Complaint—aside from the allegations regarding where the Parties reside and the address of the Property—is connected to any geographic location (*see generally* DE 1-2).

Supp. 3d 1231, 1261 (N.D. Ga. 2025) ("[T]he Court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'") (citing *Twombly*, 550 U.S. at 555)).  Even more, Plaintiff cannot point to any allegation that describes an act that occurred in Florida.  *See Oviedo v. Ramirez*, No. 21-CIV-23750, 2022 WL 1641865, at *6 (S.D. Fla. May 24, 2022) ("[T]he standard set forth by the Eleventh Circuit in *Carmouche* . . . requires Plaintiff to plead sufficient material facts to form a basis for *in personam* jurisdiction . . . ." (citation omitted)).  For example, while Defendant allegedly wired funds to her Wells Fargo account, there are no allegations regarding where the accounts were held.  *See Wiggins v. Tigrent, Inc.*, 147 So. 3d 76, 87 (Fla. Dist. Ct. App. 2014) (looking to the location of the funds to determine where the tortious act occurred for a conversion claim).  Plaintiff argued at the January 23, 2026 hearing that because his legal conclusions—that the alleged breach of contract and tort occurred in Miami-Dade County—were incorporated by reference in Counts One and Two of the Complaint, the Court should assume that all facts set forth to support those Counts occurred in Miami-Dade County.  This argument borders on frivolous and extends well beyond drawing reasonable inferences in Plaintiff's favor to simply inventing facts that are not pled in the Complaint.  The undersigned declines the invitation to re-write the Complaint in the manner Plaintiff suggests.

By mere passing reference, Plaintiff attempts to allege personal jurisdiction over Defendant, because Plaintiff "[o]wn[ed], us[ed], possess[ed], or [held] a mortgage or other lien on any real property within this state." FLA. STAT. § 48.193(1)(a)(3).  Besides citing the statute and stating it applies, Plaintiff provides no argument or explanation as to why this statutory provision constitutes a basis for specific jurisdiction in this case (DE 16 at 4).[6]  While the Property is in Florida, Plaintiff

---

[6] "A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it." *Levinson v. WEDU-TV*, 505 F. App'x 919, 920

does not argue that the cause of action arose from Plaintiff's owning, using, possessing, or holding

a mortgage or other lien on a Florida property.  *Corp. Real Est. Sols., LLC v. Boyd Watterson Asset*

*Mgmt., LLC*, No. 21-20585-CIV, 2022 WL 1184573, at *5 (S.D. Fla. Apr. 20, 2022) ("The Court

can exercise specific personal jurisdiction under section 48.193(1)(a)(3) over a nonresident

defendant 'for any cause of action *arising from* . . . [o]wning, using, possessing, or holding a

mortgage or other lien on any real property within this State.'" (emphasis added)).  The Court

cannot locate any allegation in the Complaint that states the contract at issue is somehow related

to a mortgage or lien on the Property while Plaintiff owned it.

Lastly, Plaintiff asserts that there is specific jurisdiction over Defendant under Section

48.193(1)(a)(7), because Defendant allegedly breached the oral contract regarding the distribution

of profits from the sale of the Property.  Although Plaintiff claims Defendant breached the

agreement by failing to pay Plaintiff fifty percent of the proceeds, Plaintiff never alleged that

Defendant failed to perform an act in Florida that was required by the contract.  For example, there

are no allegations regarding the location of the proceeds or where payments were supposed to be

made.  Even if Plaintiff had alleged that Defendant failed to pay Plaintiff in Florida or through a

Florida bank account, that would not suffice.  *See Ferenchak v. Zormati*, 572 F. Supp. 3d 1284,

1293 (S.D. Fla. 2021) ("[C]ourts have consistently determined that the place of payment does not

confer specific jurisdiction under Florida's long-arm statute.").  Furthermore, it is undisputed that

Plaintiff resides in New York, and "[i]n the absence of a contractual provision specifying a place

of payment, it is presumed that payment is due at the creditor's place of business."  *Brennan v.*

*Roman Catholic Diocese of Syracuse New York, Inc*. 322 F. App'x. 852, 855 (11th Cir. 2009); *see*

---

(11th Cir. 2013) (citing *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1319 (11th
Cir. 2012))

*also Osborn v. Univ. Soc., Inc.*, 378 So. 2d 873, 874 (Fla. Dist. Ct. App. 1979) ("[W]here there is an express promise to pay and the contract does not state a place of payment, the debtor must seek the creditor and thus the breach occurs where the creditor is domiciled.").

Plaintiff then attempts to rely on the Purchase Option Agreement, which designated Florida in its choice of law provision and Miami-Dade County as the venue for legal action.  Yet, as Plaintiff conceded at the January 23, 2026 hearing, the Purchase Option Agreement is not the alleged contract at issue in the Complaint, and even if it were, Plaintiff could not explain how these provisions constitute facts that demonstrate personal jurisdiction over Defendant.  *See Worth Grp., Inc. v. Morales*, No. 23-10315, 2023 WL 9018410, at *2 (11th Cir. Dec. 29, 2023) (quoting *McRae v. J.D./M.D., Inc.*, 511 So. 2d 540 (Fla. 1987) ("[A] forum selection clause, designating Florida as the forum, cannot operate as the sole basis for Florida to exercise personal jurisdiction over an objecting non-resident defendant.").  In sum, Plaintiff is unable to point to specific factual allegations in the Complaint that support the application of any provision of the Florida long-arm statute.  *See Future Tech. Today, Inc.*, 218 F.3d at 1249 ("Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction.").

   *3.     Due Process*

Defendant argues that due process considerations further prohibit this Court from exercising personal jurisdiction over Defendant (DE 13 at 8).  Defendant highlights that even if Plaintiff claimed Defendant was required to pay the funds at issue in Florida, due process is not satisfied by showing that a party entered into a contract in Florida or that payment must be made in Florida (*id*. at 9).  Plaintiff does not directly address this argument in his response, other than by asserting that due process is met and that Defendant "received and held money from the

business real estate transaction in a Wells Fargo bank branch, upon information and belief, that was in Miami-Dade [County]" (DE 16 at 5).[7]

To satisfy the due process analysis, "it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citing *Kulko v. Superior Ct. of California In & For City & Cnty. of San Francisco*, 436 U.S. 84, 97-98 (1978)). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *International Shoe Co.,* 326 U.S. at 316). "A tribunal's authority depends on the defendant having such contacts with the forum that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1274 (citations omitted).

> In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'

*Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355 (citations omitted).

Since there is no specific jurisdiction pursuant to Florida's long-arm statute, there is no

---

[7] There are several facts that Plaintiff stated in his arguments in response to the Motion to Dismiss that are nowhere to be found in the Complaint and were not submitted by way of declaration or other evidence. These facts are not properly before the Court for consideration. *See McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015) ("[A] complaint may not be amended by briefs in opposition to a motion to dismiss." (citing *Huls v. Llabona,* 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (holding that an argument raised for the first time in response to defendant's motion to dismiss, instead of in an amended complaint, was not properly raised before the district court and would not be considered on appeal))).

need to determine if the Due Process analysis is satisfied.  *See Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 862 (11th Cir. 2013) ("Because the district court properly concluded there is no basis for specific personal jurisdiction . . . we do not reach the second question of the personal jurisdiction analysis—whether such an exercise of personal jurisdiction would be constitutional."). Nevertheless, in this case, Defendant's Florida contacts, which the uncontroverted evidence shows were very limited, do not approximate the minimum contacts required to satisfy Due Process considerations.  Plaintiff's single, conclusory assertion that the breach of contract and conversion occurred in Miami-Dade County, without more, is "insufficient to show . . . that Defendant . . . had significant, purposeful contacts with Florida about the subject of this lawsuit . . . ."  *Dugan v. Jarvis*, 725 F. App'x 813, 816 (11th Cir. 2018); *see also Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 916 (11th Cir. 2015) (holding that plaintiff failed to meet her burden to show that the defendant had minimum contacts in Florida to satisfy due process because in the complaint, the plaintiff alleged that the defendant had "'contacts with [Florida] 24/7 and 365 days a year,' [but] made no specific factual allegations of these contacts.").

As to the first factor in the three-part due process test, Plaintiff fails to sufficiently demonstrate that his claims "arise out of or relate to" Defendant's contacts with the forum, because there are no specific factual allegations about what Defendant's contacts with the forum were, beyond owning a property in Coral Gables, FL for eleven days.  *See Oueiss v. Saud*, No. 20-CIV-25022, 2022 WL 1311114, at *12 (S.D. Fla. Mar. 29, 2022) ("[F]or a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum.'" (citing *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1781 (2017)).  Additionally, the contract at issue did not govern Defendant's acquisition, ownership, or sale of the Property.  The contract

at issue was an oral agreement whereby Plaintiff agreed to perform services to assist Defendant with selling the Property in exchange for the payment of money.  *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996) (finding prior dealings between the parties that were not in regard to the disputed contract were not relevant to the personal jurisdiction analysis).

Plaintiff's allegations fare no better under the second factor.  Courts have repeatedly found that "[t]he due process requirement of minimum contacts is not satisfied by a showing that a party has entered into a contract with a non-resident, or a showing that payment must be made in Florida." *Nat'l Air Cargo Grp., Inc. v. UPS Worldwide Forwarding, Inc.*, No. 22-CIV-23429, 2023 WL 3778243, at *6 (S.D. Fla. Mar. 2, 2023) (listing cases); *see also PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 811 (11th Cir. 2010) ("[A] contract with an out-of-state [party], standing alone, is insufficient to create minimum contacts because a contract is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'").  Plaintiff does not allege any facts related to prior negotiations, contemplated consequences of the contract, or a course of dealing that occurred in Florida.  *See PVC Windoors, Inc.*, 598 F.3d at 811 (stating a forum state may exercise jurisdiction over a defendant "[w]here . . . the defendant has purposefully availed itself of the benefits and protections of the forum state in its 'prior negotiations . . . [and] contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing,'").  There is no information upon which the Court can conclude that Defendant purposefully availed herself of the benefits of conducting business in Florida to satisfy the Due Process clause.

Lastly, the exercise of jurisdiction here does not comport with traditional notions of fair

play and substantial justice.  In analyzing this prong, courts consider "the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining relief, and the judicial system's shared interest in resolving the dispute." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1328 (11th Cir. 2025).  The burden on Defendant would be great, as she is an Irish citizen and resident with no connection to Florida.  Additionally, Florida does not have a particular interest in adjudicating this dispute, and Plaintiff has other forums in which he can pursue relief.  As such, Plaintiff does not allege sufficient facts to confer personal jurisdiction upon the Court over Defendant in this action, and it is respectfully recommended that Defendant's Motion to Dismiss be **GRANTED** for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## B.  Plaintiff's Insufficient Service of Process

Defendant argues that there was insufficient service of process, because Defendant was not personally served directly through a solicitor in Ireland (DE 13 at 9).  Defendant asserts that the Statutory Declaration of Personal Service filed by Plaintiff was solely notarized by, but not directly carried out by, an Irish solicitor (*id*. at 11).  Defendant further argues that the Hague Convention requires service be effectuated pursuant to the foreign state's local laws, and Irish law requires service on the individual that is subject of the suit (*id*. at 12).  Defendant argues that service was not effectuated in compliance with Irish law, because Plaintiff completed substitute service on Defendant's daughter, Katie Toscano (*id*.).

Plaintiff contends that service upon Defendant was proper, and Defendant's evidence does not overcome the presumption of valid service based on the process server's verified affidavit (DE 16 at 5).  Plaintiff takes issue with a video provided by Defendant, which allegedly shows the process server attempting to complete service in Ireland (*id*. at 6).  Plaintiff emphasizes that "at no

time on the video does [Defendant or Katie Toscano] resist the process server's service of the documents" (*id*.).  Plaintiff argues that Defendant's service of process complied with Article 10 of the Hague Convention, as Plaintiff retained a "[s]olicitor in Ireland who caused the Summons and Complaint to be served through a lawful process server; just as lawyers do every day in the U.S. to effectuate lawful service of process" (*id.*).  Plaintiff emphasizes that the solicitor was clearly "involved" in the service of process (*id*.).  Finally, even if Defendant's daughter, Katie Toscano, accepted service of process, Plaintiff claims that such substitute service was valid, as she is over eighteen years old and works at a restaurant that is listed as Defendant's primary address (*id*. at 7).

   1.  *The Evidence and Allegations Set Forth by the Parties*

Defendant submitted three declarations, and Plaintiff submitted one affidavit and an addendum thereto related to service of process.  Defendant provided two links to video surveillance that captured the attempted service of process from two different points of view (DE 13-2 ¶ 4; DE 25-2 ¶ 5).  Defendant provided two declarations from Katie Toscano dated September 21, 2025 and October 20, 2025 and a declaration from Defendant herself dated October 20, 2025 (DE 13-2, 25-1, 25-2).  Plaintiff provided an initial affidavit of service from process server Louis O'Mahony dated August 11, 2025, an addendum to the affidavit dated October 6, 2025, and an invoice of Mr. O'Mahony's services dated August 11, 2025 (DE 16-2).

   a.  *Declaration of Defendant*

Defendant submitted a supplemental declaration dated October 20, 2025, stating the photograph that the service processor used to identify her was uploaded to her Twitter account in 2013 (DE 25-1 ¶¶ 2-3).  Defendant included a current photo of herself side-by-side with the photo from 2013 "for the purpose of capturing [her] current and typical physical appearance, as compared to the 2013 Twitter profile picture" (*id*. ¶ 4).  Defendant stated that she was not at Ristorante

Rossini at any point in time on August 8, 2025, and she does not work at Ristorante Rossini (*id.* ¶ 5-6).  Defendant further stated that she has never met Mr. O'Mahony or encountered any process server attempting to give her lawsuit documents (*id.* ¶ 7).

####    *b. Declarations of Katie Toscano*

Defendant attached a sworn declaration from Katie Toscano, Defendant's daughter, which stated on August 8, 2025, a process server attempted to serve her rather than her mother (DE 13-2 ¶ 3).  The declaration presents a link to video surveillance footage showing an overhead view of a woman being served documents at a bar (*id.* ¶ 4).  Katie Toscano asserted that she is the woman in the video surveillance footage (*id.* ¶ 5).  Katie Toscano stated that while she was working behind the counter at Ristorante Rossini, a man approached her and asked her if "Trish" was present, to which she answered that no one by that name was there (*id.* ¶ 6).  The man insisted that Katie Toscano was the woman he sought (*id.*).  Katie Toscano claimed that she told the man that her name was Katie Toscano, and he then dropped a manila folder with documents in front of her and said, "[M]y work here is done" (*id.*).  Katie Toscano stated that her mother was not present at the restaurant when the man attempted service of process (*id.* ¶ 7).

Defendant also attached a supplemental declaration of Katie Toscano dated October 20, 2025, in which Katie Toscano presents additional video footage capturing a sideview of her encounter with the process server (DE 25-2 ¶ 5). The additional video footage shows a man in red approach a woman behind the bar and hand her a manila folder (*id.*).  Katie Toscano stated there is a thirty-seven-year age gap between her and her mother (*id.* ¶ 6).  Katie Toscano stated that, as a result of his relationship with her mother, she and Plaintiff have been in each other's presence on many occasions over the years, he is familiar with her appearance and her role at Ristorante Rossini, and he would be able to identify her on the video footage (*id.* ¶ 7).  Katie Toscano stated

that her mother was "absolutely not present at Ristorante Rossini on the evening of August 8, 2025 when the process server apparently mistook [her] for [her] mother" (*id*. ¶ 8).

### c.   *Affidavit and Supplement of Louis O'Mahony*[8]

In his Response, Plaintiff attached a verified affidavit from the process server, Louis O'Mahony, in Ireland that attests to service of process (DE 16-2 at 1).   In the affidavit, Mr. O'Mahony stated that he served Defendant by handing her a certified copy of the documents (*id*. ¶ 1).   Mr. O'Mahony claimed that at the time of service, he was acquainted with the appearance of Defendant (*id*. ¶ 2).   Solicitor Myra Dinneen's signature appears below the process server's, as a "practising Solicitor and a person authorised to take and receive statutory declarations" (DE 16-2 at 1).   Plaintiff also attached an Addendum to the Statutory Declaration of Personal Service, in which Mr. O'Mahony declared that his statutory declaration of personal service is true and correct, that he confirmed the person he served was Defendant through a photograph which was attached to the affidavit, and that he handed Defendant the documents (DE 16-2 at 3).

### 2.   *Service of Process was Insufficient under the Hague Convention*

"Ireland . . . has objected in part to service under Article 10 of the Hague Convention—instead, Ireland requires service to be completed 'directly through a solicitor in Ireland.'" *Todd Benjamin Int'l, Ltd. v. TCA Fund Mgmt. Grp. Corp.*, No. 20-21808-CIV, 2022 WL 14851357, at *1 (S.D. Fla. Oct. 26, 2022) (citation omitted).   Here, Plaintiff first alleges that service was proper, because a solicitor "was involved with the service of process on Defendant" (DE 16 at 6).   But, a solicitor's "involvement" does not satisfy the Irish law requirement that service be effectuated "*directly* through a solicitor in Ireland."   *Todd Benjamin Int'l, Ltd.*, 2022 WL 14851357, at *1

---

[8] In the Statutory Declaration of Personal Service, the process server signed his named as "Louis O'Mahony" (DE 16-2 at 1).   In the Addendum to the Statutory Declaration of Personal, the process server signs his name "Lewis O'Mahony" (*id*. at 3).

(S.D. Fla. Oct. 26, 2022) (emphasis added).  Additionally, while the affidavit Plaintiff provided is signed by a solicitor, it is unclear what exactly the solicitor's "involvement" was in effectuating the service, if any (DE 16-2 at 1).  As Defendant points out, the solicitor could have been merely a notary for the process server's affidavit.  Plaintiff failed to submit an affidavit from the Irish solicitor explaining her role in effectuating service.  *See GCIU-Emp. Ret. Fund*, 2015 WL 622327, at *2 (finding affidavit from an Irish solicitor stating her involvement in service was sufficient).

Moreover, Irish law requires that Defendant be personally served with the documents. Service of Summons Order 9(2) (SI 475/2017) (Ir.), https://www.irishstatutebook.ie/eli/2017/si/4 75/made/en/print.  Substitute service is not permitted unless it appears by affidavit that defendant is within the jurisdiction and that reasonable diligence has been exercised to effect personal service of process on him or her.  *Id*. That is not the case here nor has Plaintiff argued that this part of the statute applies.  Plaintiff argues that even if he served the wrong person, service is still proper, because Defendant's daughter is over eighteen years-old and was served at Defendant's primary address (DE 16 at 7).  Plaintiff inexplicably relies on the Federal Rules of Civil Procedure, Florida law, and an article of the Hague Convention that deals with service of witness subpoenas for support, not Irish law.  By contrast, Defendant has provided multiple sworn declarations stating Defendant was not the person served (DE 13-2 ¶ 3; DE 25-2 ¶ 3; DE 25-1 ¶ 7).  In response, Plaintiff provides an uncompelling, unsworn statement from the process server, using a different spelling of his first name, who continues to assert that he served Defendant and confirmed her appearance though a 2013 photograph and an unidentified employee on the premises who was familiar with Defendant (DE 13-3).  *Harris v. Fort Pierce Police Dep't*, No. 23-10727, 2023 WL 7153928, at *1 (11th Cir. Oct. 31, 2023) ("When the defendant challenges service of process, the

plaintiff bears the burden of establishing its validity.").  Plaintiff has not demonstrated that Defendant was properly served as required by Federal Rule of Civil Procedure 4(f).

### C.  Count Two Fails to State a Claim of Conversion

As the final challenge in the Motion to Dismiss, Defendant argues that the factual allegations in the Complaint fail to allege a conversion claim (DE 13 at 12).  According to Defendant, Plaintiff's sole basis for his claim to the funds at issue is a payment obligation owed pursuant to his agreement with Defendant (*id*. at 13).  Defendant claims that there is no scenario under which the funds were ever Plaintiff's property (*id*.).  Defendant emphasizes that the funds belonged to the buyer of the Property, not Plaintiff, before they were delivered to Defendant (*id*.).  Additionally, Defendant argues that Plaintiff does not, and cannot, allege Defendant converted his property, as required by Florida law (*id*.).

Plaintiff argues that he sufficiently pled the elements of conversion by alleging he was entitled to fifty percent of the post-tax net proceeds from Defendant after the sale of the Property, Defendant had a duty to release the funds to him, and Defendant refused to release funds to him (DE 16 at 8).  Plaintiff reiterates that he made a demand for the funds, which Defendant ignored, and as such, the funds unlawfully remained in Defendant's possession (*id*.). According to Plaintiff, when viewing the allegations in the light most favorable to Plaintiff, the Complaint clearly sets forth the elements for conversion (*id*.).

"In Florida, '[a] mere obligation to pay money may not be enforced by a conversion action.'" *Frayman v. Douglas Elliman Realty*, LLC, 515 F. Supp. 3d 1262, 1285 (S.D. Fla. 2021) (quoting *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970)).  "For a plaintiff to succeed on a claim of conversion of money, 'the . . . conversion must go beyond, and be independent from, a failure to comply with the terms of a contract." *Id*. (quoting *Gasparini v.*

*Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)). "A conversion claim for money also requires proof that the funds are specific and identifiable." *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 272 (11th Cir. 2009) (citation omitted). "This identification requirement ensures that a fund of money actually exists to pay a specific debt owed and the claimant is not merely transforming a contract dispute into a conversion claim." *Id*. (citing *Allen v. Gordon,* 429 So.2d 369 (Fla. 1st DCA 1983)).

In the Complaint, Plaintiff alleges that he and Defendant entered into an agreement, whereby Plaintiff would assist Defendant in the sale of the Property, and in exchange, they would split half of the post-tax proceeds from the sale (DE 1-2 ¶ 9). Plaintiff's claims for conversion are entirely based on the allegations that Defendant owes Plaintiff a sum of money, but there are no allegations that the funds are specific and identifiable. *See Gasparini*, 972 So. 2d at 1056 ("For money to be the object of conversion 'there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified.'" (citation omitted)). For instance, at the time Defendant received the funds, she was not required to hold them in a segregated or escrow account. She could store and co-mingle the funds as she wanted. Accordingly, Plaintiff's claim for conversion is deficient as a matter of law. *See Frayman*, 515 F. Supp. 3d at 1285 (holding that the Plaintiff failed to state a claim for conversion when the claim was based on a failure to return $65,000.00 to the plaintiff and the plaintiff failed to allege the $65,000.00 was "sufficiently identifiable"). It is respectfully recommended that Count Two of the Complaint for conversion fails to state a claim upon which relief can be granted.

### D. Leave to Amend the Complaint

Plaintiff states in his response to the Motion to Dismiss that the Court should deny the Motion or, alternatively, grant the Plaintiff fifteen days to file an amended complaint or sixty days

23

to perfect service of process (DE 16 at 8).[9]  Defendant argues that Plaintiff's request for leave to amend is improper, because Plaintiff did not file a motion pursuant to Federal Rule of Civil Procedure 15 or attach a proposed amended complaint pursuant to Local Rule 15.1 (DE 25 at 9). At the January 23, 2026 hearing, Plaintiff's counsel represented to the Court that he only included the request to amend as an "either or" statement as a matter of course, he does not think the Complaint is deficient, and he was not attempting to move for leave to file an amended complaint. Therefore, given Plaintiff's counsel's unequivocal statements that Plaintiff does not wish to file an amended complaint, it is the undersigned's view that no request for leave to amend was sought or requested from the Court.

## IV.   CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendant's Motion to Dismiss (DE 13) be **GRANTED** and that this case be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## V.   OBJECTIONS

The Parties will have fourteen (14) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain

---

[9] "[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."  *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty*., Fla., 48 F.4th 1222, 1236 (11th Cir. 2022) (citation omitted).

error, if necessary, in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 29th day of January, 2026.

                                         _____
                                         ELLEN F. D'ANGELO
                                         UNITED STATES MAGISTRATE JUDGE

cc:     All Counsel of Record